OPINION
{¶ 1} Defendant-appellant, Ronnie D. Wilson, appeals his conviction in the Court of Common Pleas, Putnam County, on nine counts of rape in violation of R.C. 2907.02(A)(1)(b), first degree felonies, and eleven counts of sexual battery in violation of R.C. 2907.03(A)(5), third degree felonies.
 {¶ 2} Wilson's convictions stem from accusations by his daughter, CW, involving improper sexual conduct. In November 2004, while they were driving together to Lima, Ohio, CW first reported to her mother, Barbara Wilson, that her father had touched her in a sexual manner, and that he had "done [things] a father should not do to a child." Barbara immediately turned the car around and returned home to confront Wilson; she sent CW and her siblings to an aunt's house.
 {¶ 3} Barbara confronted Wilson, alone, about CW's accusations at their home in Cloverdale, Ohio. Wilson initially denied all of his daughter's allegations. However, after Barbara summoned CW to return home to confront her father Wilson eventually confessed, admitting that what CW said was true. He stated that he "did not know why" he had done these things.
 {¶ 4} The family did not report this incident, apparently at CW's request, and began attending counseling sessions in the hopes of keeping the family together. However, Barbara and Wilson eventually separated, after the extent of Wilson's actions became clear several months later.
 {¶ 5} CW initially disclosed to her mother in November 2004 that her father had touched her inappropriately. In May 2005, however, CW reported the full extent of Wilson's activity to her mother; that Wilson's inappropriate touching had begun in 2000 when she was eleven years old, that it progressed to him having her perform oral sex on him about once a week, that it evolved into him performing oral sex on her, and eventually to anal sex. This activity continued for over four years, and only stopped after CW told her father that it could not continue.
 {¶ 6} After CW disclosed the full extent of Wilson's actions to her mother, Barbara contacted the police. Following an investigation, Wilson was indicted on June 6, 2005 by the Putnam County Grand Jury. Prior to trial, Wilson filed several motions with the court, two of which are relevant to this appeal. First, Wilson filed a motion to suppress the statements made by both him and his wife Barbara. Specifically, Wilson sought to suppress statements made by him on November 4, 2004 when Barbara confronted him about their daughter's accusations. Wilson also attempted to suppress statements made by him to his wife when she met with him at the Putnam County Jail in May 2005 wearing a recording device provided by the police, and statements made by him during a phone conversation with Barbara in May, 2005. Second, Wilson filed a motion to determine the competency of the State's witnesses under Evid.R. 601(A). Wilson also requested in this motion a court determination of whether Barbara was competent to testify pursuant to R.C. 2945.42; Wilson argued that the above statements made between him and his spouse were privileged spousal communications.
 {¶ 7} A hearing was held on the motions on August 12, 2005. At the hearing, the prosecutor stipulated that the recording of the conversation at the Putnam County Jail would not be introduced at trial. Following the hearing, the trial court ruled on the motions in its August 18, 2005 judgment entry. The trial court overruled the motion to suppress the statements made by Wilson to his wife during the November 4, 2004 confrontation and overruled the motion to suppress with regard to the May 2005 phone conversation. The court also ruled that Barbara was competent to testify to both conversations and that no privilege existed pursuant to R.C. 2942.42.
 {¶ 8} Wilson was found guilty on all counts following a jury trial on August 31, 2005, and a sentencing hearing was held on September 20, 2005. The trial court imposed a ten year prison term for each of the nine indicted charges of rape. The court then ordered that the prison terms for Counts II through V run concurrently to each other, that the terms for Counts VI through IX run concurrently, but that those sets of concurrent terms run consecutive to each other and consecutive to the term imposed for Count I, resulting in a total of thirty years imprisonment. On the eleven sexual assault charges the trial court imposed concurrent prison terms of five years; these terms were also to run concurrently to the terms imposed for the rape offenses. Wilson now appeals from this judgment, asserting two assignments of error:
 Assignment of Error I The trial court committed an error of law in determiningcompetency pursuant to R.C. 2945.42.
 {¶ 9} In his first assignment of error, Wilson claims that the trial court erred in interpreting R.C. 2945.42 when it permitted Barbara to testify to spousal conversations.
 {¶ 10} At the outset, we must distinguish between two distinct legal concepts: spousal privilege and spousalcompetency. These two concepts "interrelate and provide two different levels of protection for communications between spouses." State v. Adamson (1995), 72 Ohio St.3d 431, 433. First, Evid.R. 601 governs the competency of witnesses, which determines whether an individual is allowed to testify. SeeState v. Mowery (1982), 1 Ohio St.3d 192, 194, 438 N.E.2d 897
(noting that Evid.R. 601 supersedes the competency provisions of R.C. 2945.42). That rule states that "[e]very person is competent to be a witness except * * * (B) [a] spouse testifying against the other spouse charged with a crime except when either of thefollowing applies: (1) [a] crime against the testifying spouse or a child of either spouse is charged * * *." Evid.R. 601(B). Thus, because the crime charged in the instant case was against Wilson's daughter, Barbara was unquestionably competent to testify in the case.
 {¶ 11} The question remains, however, of whether Wilson can successfully assert a spousal privilege to prevent Barbara from testifying to certain privileged communications. The availability and extent of privileges is governed by statute. Evid.R. 501. With regard to spousal privilege in criminal cases, R.C. 2945.42
governs and provides in pertinent part:
Husband or wife shall not testify concerning a communicationmade by one to the other, or act done by either in the presenceof the other, during coverture, unless the communication was madeor act done * * * in [a] case of * * * cruelty of either to theirchildren under eighteen years of age * * *.
Therefore, under the clear and unambiguous language of R.C.2945.42, the spousal privilege does not extend to communications made between spouses that concern cruelty to their children.
 {¶ 12} In finding that R.C. 2945.42 did not extend the spousal privilege to the communications in this matter, the trial court relied on State v. Patterson (Jan. 15, 1992), 9th Dist. No. 91CA004975, unreported, 1992 WL 6651, at *5. Wilson seeks to distinguish the Patterson decision on the grounds that in that case the trial court allowed the husband to testify to specific prior acts by the mother, but that there was no testimony by the husband concerning communications made in regard to the underlying murder charge. Patterson, supra at *2. In that case, however, Patterson made two separate arguments: (1) that the husband should not have been permitted to testify regarding prior acts, and (2) that the husband could not testify to privileged information. These arguments were separate and distinct; the fact that the Patterson court permitted the prior acts testimony cannot be read as a limitation on the discussion concerning the applicability of spousal privilege under R.C. 2945.42. The discussion concerning the spousal privilege was not limited to the testimony concerning the prior acts. Rather, the Patterson
court expressly found that the husband could testify to "all communications concerning acts done against [the child]," because the charges against the mother related to cruelty against their child. Patterson, supra at *5. Thus, Patterson is directly applicable to the instant case.
 {¶ 13} Accordingly, we find that the trial court did not err in permitting Barbara to testify to the spousal communications in this case, because the communications were specifically in regards to acts of rape and sexual assault against the couples' daughter. Based on the foregoing, the first assignment of error is overruled.
 Assignment of Error II The appellant was denied effective assistance of counsel.
 {¶ 14} In his second assignment of error, Wilson argues that he was denied effective assistance of counsel. The Ohio Supreme Court has adopted the two part test for ineffective assistance of counsel articulated in Strickland v. Washington (1984),466 U.S. 668. See State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. Under that test, "[a] convicted defendant must first show that his attorney's performance `fell below an objective standard of reasonableness,' and must then show that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Jones (Sept. 27, 2000), Auglaize App. No. 02-2000-07, unreported, 2000 WL 1420271, quoting Strickland, 466 U.S at 688, 694. As to the first prong of the test, courts are to afford a high level of deference to the performance of trial counsel. Bradley,42 Ohio St.3d at 142. Further, we are also guided by the presumption that attorneys licensed by the State of Ohio "provide competent representation." Jones, supra, citing State v. Hoffman
(1998), 129 Ohio App.3d 403, 407. The second prong then requires a probability sufficient to undermine the confidence in the outcome of the proceedings. Jones, supra.
 {¶ 15} Wilson first argues that his trial counsel was ineffective because he did not properly preserve a continuing objection to the admission of the audiotaped phone conversation between Wilson and his wife. He claims that under State v.Henness (1997), 79 Ohio St.3d 53, a "continuing objection" is insufficient to preserve the issue of the existence of a marital privilege on appeal. Instead, Henness holds that "[t]he existence of a marital privilege turns on the specific circumstances surrounding each alleged privileged communication * * *, [t]hus, appellant had to object specifically so the circumstances could be determined." Id. at 59. Wilson further contends that this objection should have been brought at the initial hearing to determine the applicability of the marital privilege in this case.
 {¶ 16} However, under the first assignment of error we agreed with the trial court and found that the spousal privilege under R.C. 2945.42 was not available in the instant case. Accordingly, we need not address whether defense counsel properly preserved the objection, because that error, if it existed, did not affect the result of the proceedings — the trial court was correct in admitting the audiotapes.
 {¶ 17} Wilson also argues that counsel was ineffective because he failed to object to the testimony of Deputy Terry Dockery and Mary Ricker, the Department of Jobs and Family Services caseworker, concerning what was reported by CW. Wilson argues that these witnesses testified to the consistency of statements made by CW when she was being interviewed. Wilson claims that these statements were made merely for the purposes of bolstering CW's testimony, and therefore they were hearsay statements that were inadmissible at trial.
 {¶ 18} However, we again cannot say that the admission of these statements affected the outcome of the proceedings. Wilson is objecting to a few statements made by these witnesses, some of which, contrary to his assertions, are not hearsay. Wilson complains that Ricker testified to the fact that she substantiated her findings of abuse in part on the consistency of CW's statements. Ricker testified that "abuse was substantiated based on the fact that CW's statements were consistent with some of the evidence that we found in the home, they were consistent with [the] statement from [her sister], and they were also consistent with some of the information that we had received from [Barbara]." This is not a hearsay statement, because it is not a statement "other than one made by the declarant while testifying at trial * * *." Evid.R. 801(C). Ricker was not testifying to statements made by CW, only that they were consistent with statements made by others.
 {¶ 19} The remaining statements Wilson is objecting to did not affect the course of the proceedings. He is objecting to two statements made during the course of a three day trial. The first statement, made by Deputy Dockery, was in response to a question asking whether CW's story changed during the course of his investigation. Dockery testified:
"[A]s far as being consistent, she was consistent. Even in theintial interview, she didn't only disclose that there wastouching, in the initial interview that I observed, she disclosedthat there was also, she was made to do oral sex. He would alsorub his penis against what she called her butt until heejaculated, and that was in the initial interview."
The final portion of that testimony arguably constituted inadmissible hearsay, but Dockery was certainly permitted to testify to his observation that CW's statements were consistent. The second statement, made by Ricker, was in response to a question concerning whether CW alluded to specific dates. She stated that CW "told me that she thought it had started happening when she was twelve or thirteen years of age." Again, this statement is arguably inadmissible as hearsay.
 {¶ 20} However, in light of the significant testimony and evidence offered against Wilson, including evidence that he admitted to the allegations when confronted by his wife and daughter, we are unable to conclude that there is a reasonable probability that the result of the trial would have been different had counsel objected to these two statements. Moreover, given that defense counsel had cross-examined CW on the consistency of her statements and cross-examined both Ricker and Dockery in order to determine if CW's statements to them were consistent with her in-court testimony, choosing not to object to these statements was reasonable trial strategy. See Strickland,466 U.S. at 689. Furthermore, given that these were two relatively isolated statements made during a lengthy trial, Wilson has failed to fulfill his burden of establishing that allowing these statements into the record somehow affected the outcome of the trial.
 {¶ 21} Accordingly, Wilson's second assignment of error is overruled. Based on the foregoing, the judgment of the Court of Common Pleas, Putnam County, is affirmed.
Judgment affirmed.
 Bryant, P.J., and Rogers, J., concur.