OPINION
{¶ 1} Defendant-Appellant, Daniel H. Chaney, appeals the judgment of the Seneca County Court of Common Pleas convicting him of rape and gross sexual imposition. On appeal, Chaney argues that the trial court erred in overruling his motion to suppress; that the trial court erred in overruling his motion in limine; that the trial court erred in denying his motion to instruct the jury on lesser included offenses; that the trial court erred in denying his motion to dismiss in violation of his right against double jeopardy; and, that the verdict is against the manifest weight of the evidence. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In June 2004, the Seneca County Grand Jury indicted Chaney on two counts of rape in violation of R.C. 2907.02(A)(1)(b)(2), with force specifications, felonies of the first degree, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1)(4), a felony of the third degree. The indictment arose from a course of conduct beginning in September 1995 and ending in September 2002, during which Chaney engaged in sexual activity with his minor stepdaughter, B.C. (D.O.B. September 9, 1989). Chaney denied all sexual conduct and proffered that any alleged sexual contact occurred because B.C. sleepwalked into his bedroom and he mistook her for his wife. *Page 3 
 {¶ 3} In August 2004, Chaney entered a plea of not guilty to all counts in the indictment.
 {¶ 4} In November 2004, the case proceeded to jury trial and the jury convicted Chaney of one count of forcible rape, one count of rape without the force specification, and one count of gross sexual imposition. Subsequently, the trial court sentenced Chaney to a mandatory term of life imprisonment on the count of forcible rape, to a nine-year prison term on the count of rape without the force specification, and to a four-year prison term on the count of gross sexual imposition, to be served consecutively. Additionally, the trial court found Chaney to be a sexual predator and a child-victim predator.
 {¶ 5} In December 2004, Chaney appealed his November 2004 conviction and sentence to this Court.
 {¶ 6} In October 2006, this Court reversed and remanded the case inState v. Chaney, 3d Dist. No. 13-04-55, 2006-Ohio-5288, finding that the trial court abused its discretion by overruling Chaney's motion to ask B.C. whether she had made prior false accusations of rape.
 {¶ 7} In April 2007, Chaney filed a motion to suppress a recording made of a telephone conversation between him and his wife, on the basis that the recording was privileged as a marital communication, and also filed a motion in limine to exclude evidence of alleged prior acts. *Page 4 
 {¶ 8} In May 2007, Chaney filed a motion to dismiss the force specification of the second rape count on the basis of double jeopardy, a motion to dismiss the first count of rape on the basis ofValentine v. Konteh (C.A.6, 2005), 395 F.3d 626, and a motion for a bill of particulars pursuant to Crim. R. 7(E). Thereafter, the trial court granted Chaney's motion to dismiss the force specification of the second rape count and denied Chaney's motion to dismiss the first count of rape on the basis of Valentine.
 {¶ 9} In June 2007, Chaney entered a plea of not guilty by reason of insanity.
 {¶ 10} In July 2007, the trial court found that Chaney was competent to stand trial.
 {¶ 11} In August 2007, Chaney filed proposed jury instructions with the trial court including an instruction on sexual battery as a lesser included offense of rape.
 {¶ 12} In September 2007, the State filed a bill of particulars in response to Chaney's request stating:
 [Count One:] * * * As a continuing course of conduct beginning September 9, 1995 through September 9, 2002 Village of Bloomville, Seneca County, Ohio, [Chaney] did insert his fingers into the vagina of [B.C.] by force or threat of force, while the said [B.C.] was under thirteen (13) years of age.
 * * *
 [Count Two:] * * * As a continuing course of conduct beginning September 9, 1995 through September 9, 2002 in the Village of *Page 5 Bloomville, Seneca County, Ohio, [Chaney] did engage in cunnilingus with [B.C.] while [B.C.] was under thirteen (13) years of age.
 * * *
 [Count Three:] * * * As a continuing course of conduct beginning September 9, 1995 through September 9, 2002 in the Village of Bloomville and City of Tiffin, Seneca County, Ohio, [Chaney] did rub the breasts and vagina of [B.C.] while the said [B.C.] was less than thirteen (13) years of age.
(September 2007 Bill of Particulars, pp. 1-2).
 {¶ 13} In September 2007, Chaney filed a "motion in limine" requesting permission to ask B.C. about prior false allegations of rape or sexual conduct.
 {¶ 14} In October 2007, Chaney filed a motion to withdraw his plea of not guilty by reason of insanity, which the trial court granted. Further, the trial court denied Chaney's motion for proposed jury instructions in its entirety. Thereafter, the case proceeded to retrial at which the following testimony was heard.
 {¶ 15} Detective Kevin Reinbolt of the Seneca County Sheriff's Office testified that he began an investigation of Chaney in 2002 after Chaney's wife, Esther Chaney, and B.C. accused him of raping B.C.; that, when abuse occurs over a period of several years, "the chances of getting any DNA are very slim to none, especially where there was [sic] no allegations of a penile insertion, so there would be no semen * * * [and B.C.] had taken showers daily and so forth, so there would be no DNA as to saliva" (trial tr., vol. I, p. 132); and that, with Esther's consent, he recorded telephone calls between her and Chaney as part of the investigation. *Page 6 
 {¶ 16} Esther testified that she was married to Chaney for twelve years; that she and B.C. resided with Chaney in Seneca County from 1989 until 2002; that, during this time period, she typically worked the midnight shift at her place of employment, from 10:00 p.m. until 7:00 a.m.; that she came home early and discovered Chaney and B.C. in bed together about three times, beginning in 2001; that she does not know if B.C. sleepwalks; that, on November 25, 2002, she came home from work and found B.C. in bed with Chaney; that, on that same day, she conducted a "family meeting" at which B.C. alleged that Chaney had abused her; that, when B.C. made these allegations, Chaney ran from the house; that, in December 2002, she gave Detective Reinbolt permission to record telephone conversations between her and Chaney; and, that, during one of these conversations, Chaney told her that he had touched B.C.'s breasts and that he had touched B.C.'s vagina, but "not purposely."
 {¶ 17} Thereafter, the State introduced a recording of a telephone conversation between Chaney and Esther into evidence, containing the following pertinent dialogue:
 [Esther]: You said you sucked [B.C.'s] tits, right? Did you suck her tits?
 [Chaney]: Yeah, when she was in our bed, you know.
 * * *
 [Chaney]: She ends up in our bed, you know, way — you know in the middle of the night you wake up and — I don't know. It's hard to explain.
 * * * *Page 7 
 [Esther]: Now, you told me the other day, though, that you did touch her down there. You did tell me that.
 [Chaney]: Esther — touched her, yeah, when she sleepwalked, end [sic] up in our bed. * * * This is in the middle of the night when you're half out of it, okay? * * * You know, it's — And then when I realized I said, "get — [B.C.], get out. Get in your own room" you know?
 * * *
 [Esther]: how many times did you — did you suck her breasts, then?
 [Chaney]: Just that one time.
 * * *
 [Esther]: I wanna know how long's [sic] it been going on? How — How — How long have you been messing with her?
 [Chaney]: Oh, my God. Not — not like — long.
 [Esther]: Like what? Since me moved into this new — that new place? * * *
 [Chaney]: Probably about, yeah. She might have slept walked once before.
 * * *
 [Chaney]: I feel like I got a problem. But I'm not the only one that's got a problem. OK? That's all I'm saying.
 [Esther]: Uh-huh. And did . . . You fondled her. Right? Grabbed her breasts when you were cuddling with her and that, thinking it was me.
 [Chaney]: Middle of the night. Yeh. She's sleeping. Or, you know, I'm out of it. And I wake up. Realizing. "[B.C.]. Get out of my bed."
 * * *
 [Esther]: Do you swear on the Bible to God that you didn't touch her vagina? Did you touch her vagina?
 [Chaney]: Not purposely. * * * In my sleep probably, but not purposely is what I'm saying. * * * Yes, in my sleep, you know, when you're totally out of it.
 * * *
 [Chaney]: * * * I want our family back, okay? But I know that's — you know — that's blown up cause Satan had to come and screw me up, right? I mean, are you
 [Esther]: Well, you can't blame it all on Satan. Satan didn't touch [B.C.]. *Page 8 
 [Chaney]: Yeah. But Satan gives you the — the — * * *
 [Esther]: Power of suggestion?
 [Chaney]: There you go.
 [Esther]: Yes. So what made you touch — wanna touch [B.C.], the evil side or —
 [Chaney]: Obviously, isn't it?
 * * *
 [Chaney]: I'm saying she ended up sleepwalking in our bed a couple times in six months. * * * You guys are making me out to be this total creep, okay? If I was a creep I'd be doing this to a f___ in' three year old. You're doing — You're making me out to be a creep. I wanna tell you something, there is [sic] countries today that get married at 13 years old, okay?
 * * *
 [Esther]: Well, I wish you wouldn't have touched [B.C.]. I wish you wouldn't have even touched [B.C.]. [Chaney]: Gee, me too.
(Trial Tr., vol. II, pp. 163-204).
 {¶ 18} B.C. testified that she once told a human services worker that Chaney never touched her, but that she said this because she and Chaney were in the same household when they questioned her; that Chaney sexually abused her from the time she was seven until she was twelve; that Chaney first began touching her when they lived on South Sandusky Street in Tiffin; that the first time Chaney touched her, he came into her room and rubbed her breasts and vagina; that she told him to stop and asked him why he was doing this, and Chaney told her "I don't get enough love from your mom" (trial tr., vol. III, p. 279); that she did not tell anyone because Chaney threatened to hurt her mother or take her stepbrother away from the family and told her that no one would believe *Page 9 
her; that, while living at South Sandusky Street, Chaney touched her in this same manner every day, except weekends when Esther was home.
 {¶ 19} B.C. continued that, when she was ten years old, her family moved to Third Avenue in Tiffin for six months; that, while living on Third Avenue, Chaney touched her every day by coming into her room at night when Esther was at work and rubbing her breasts and vagina; that she kept her eyes closed while this was happening because she didn't want to see what Chaney was doing; and, that Chaney continued to tell her not to tell anyone.
 {¶ 20} B.C. further testified that her family moved to Marion Street in Bloomville for a year when she was ten or eleven; that Chaney touched her while they lived there; that, on one occasion, when she was eleven, she was sleeping on the couch and Chaney forced her legs open, rubbed her vagina, and then forcibly put his finger into her vagina; that, when she was eleven, Chaney also engaged in cunnilingus with her several times at the Marion Street home.
 {¶ 21} B.C. continued that, when she was twelve years old, the family moved to Maple Street in Bloomville for about seven months; that Chaney rubbed her vagina and breasts, forced his fingers into her vagina, and engaged in cunnilingus with her while they lived at this address; that, on all of these occasions, Chaney forced her to submit to this activity; and, that, when she *Page 10 
revealed that Chaney had abused her at the family meeting, Chaney ran out of the house.
 {¶ 22} On cross-examination, B.C. testified that she has never made false allegations related to rape or other sexual conduct; but, that she did tell the police that she engaged in sexual conduct with her high school boyfriend and then, when she realized that he could get into trouble for this, told the police that she did not engage in sexual conduct with him; that she never reported to her family doctor that she was being abused or was examined for sexual abuse before she was twelve; that she recalls, on one occasion, when Chaney touched her while they lived on Maple Street, that she could see Chaney watching a pornographic movie on television and he called her into the living room and put his finger into her vagina; that she remembers Esther coming home and discovering her and Chaney in bed together on one occasion, and that she told Esther that she "sleptwalked [sic]" (trial tr., vol. III., p. 322); that she never told a school counselor or teacher about the abuse; and, that, occasionally during the abuse, she would open her eyes and would see Chaney masturbating, but that she was unable to describe Chaney's genitalia to Detective Reinbolt because she did not look at it.
 {¶ 23} At the conclusion of the testimony, the trial court stated the following as part of its charge to the jury:
 Count One. Rape. * * *
 * * * *Page 11 
 Sexual conduct. Sexual conduct means vaginal intercourse without privilege to do so the insertion, however slight of any part of the body into the vaginal cavity of another. Penetration, however slight, is sufficient to complete vaginal intercourse.
 * * *
 Count Two. Rape. * * *
 * * *
 Sexual conduct, as it relates to Count Two, means cunnilingus between purses [sic] — persons, regardless of sex, without privilege to do so the insertion, however slight of any part of the body into the vaginal cavity of another.
 * * *
 Court Three. Gross Sexual Imposition. * * *
 Sexual Context [sic] — excuse me — Sexual Contact. Sexual Contact means any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast for the purpose of sexually arousing or gratifying either person.
(Trial Tr., vol. III, p. 360-364).
 {¶ 24} Subsequently, the jury convicted Chaney of both counts of rape and the count of gross sexual imposition as charged in the indictment. The trial court sentenced Chaney to a mandatory term of life imprisonment on the first count of rape, to a nine-year prison term on the second count of rape, and to a two-year prison term on the count of gross sexual imposition, to be served consecutively. Additionally, the trial court found Chaney to be a sexually oriented offender.
 {¶ 25} It is from this judgment that Chaney appeals, presenting the following assignments of error for our review. *Page 12 
 Assignment of Error No. I THE TRIAL COURT ERRED IN OVERRULING THE DEFENSE'S MOTION TO SUPPRESS AND EXCLUDE STATE'S EXHIBIT 1, THE AUDIO RECORDED PHONE CALL(S) ON DECEMBER 6TH, 2002 BETWEEN THE DEFENDANT AND HIS SPOUSE ON THE BASIS OF SPOUSAL COMMUNICATION PRIVILEGE.
 Assignment of Error No. II THE TRIAL COURT ERRED IN OVERRULING THE DEFENSE'S MOTION IN LIMINE TO EXCLUDE STATE'S EXHIBIT 1, THE AUDIO RECORDED PHONE CALL(S) ON DECEMBER 6TH, 2002 BETWEEN THE DEFENDANT AND HIS SPOUSE, AND THE STATEMENTS OF THE DEFENDANT THEREON, UNDER EVIDENCE RULE 403 ON THE BASIS THEIR PREJUDICE SUBSTANTIALLY OUTWEIGHED THEIR PROBATIVE VALUE.
 Assignment of Error No. III THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO INSTRUCT THE JURY ON LESSER INCLUDED OFFENSES, AND IN FAILING TO PROVIDE THE JURY WITH A VERDICT FORM FOR LESSER INCLUDED OFFENSES.
 Assignment of Error No. IV THE TRIAL COURT ERRED AND VIOLATED THE DEFENDANT'S CONSTITUTIONAL PROTECTIONS AGAINST DOUBLE JEOPARDY BY DENYING THE DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT. *Page 13 
 Assignment of Error No. V THE VERDICT OF THE JURY IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.
 Assignment of Error No. I {¶ 26} In his first assignment of error, Chaney contends that the trial court erred when it overruled his motion to suppress and exclude the audio recording of the telephone conversation on the basis of marital communication privilege. Specifically, Chaney argues that the marital communication privilege applies because the context of the conversation shows that Chaney was attempting to reconcile with Esther and that he made speculative statements in an effort to communicate with her.
 {¶ 27} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." State v. Dudli, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing United States v.Martinez (C.A.11, 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented.State v. Johnson (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. State v. Roberts,110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing State *Page 14 v. Fanning (1982), 1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo.Roberts, supra, citing State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372, at ¶ 8.
 {¶ 28} Spousal privilege and spousal competency are two distinct legal concepts intended to protect marital communications. State v.Wilson, 3d Dist. No. 12-05-20, 2006-Ohio-2000, ¶ 10. These concepts "interrelate and provide two different levels of protection for communications between spouses." State v. Adamson (1995),72 Ohio St.3d 431, 433. Evid. R. 601 governs competency of witnesses and provides that:
 Every person is competent to be a witness except:
 (B) A spouse testifying against the other spouse charged with a crime except when either of the following applies:
 (1) a crime against the testifying spouse or a child of either spouse is charged;
 (2) the testifying spouse elects to testify.
Additionally, R.C. 2945.42 provides, in pertinent part:
 Husband or wife shall not testify concerning a communication made by one to the other, or act done by either in the presence of the other, during coverture, unless the communication was made or act done * * * in [a] case of * * * cruelty of either to their children under eighteen years of age[.] * * *
As used in R.C. 2945.42, the term "their children" encompasses the children of either spouse. State v. Rahman (1986), 23 Ohio St.3d 146,148. *Page 15 
 {¶ 29} Spousal privilege is governed by Evid. R. 501, which provides that the privilege of a witness is governed by statute. Thus, R.C. 2945.42 governs issues of privilege in criminal cases, which "confers a substantive right upon the accused to exclude privileged spousal testimony concerning a confidential communication made or act done during coverture, unless a third person was present or one of the other specifically enumerated exceptions contained in the statute is applicable." State v. Vanhoy, 3d Dist. No. 7-2000-01, 2000-Ohio-1893, citing State v. Adamson (1995), 72 Ohio St.3d 431.
 {¶ 30} Here, Chaney contends that the recorded conversation was privileged as a marital communication. However, Chaney's argument ignores the well-established exceptions to the general rules concerning spousal privilege and spousal competency. R.C. 2945.42 expressly exempts situations where the spousal communication concerned "cruelty of either to their children under eighteen years of age." Here, the pertinent portions of the recording concerned Chaney's sexual abuse of Esther's minor child, B.C. Thus, the general spousal privilege granted by this code section does not apply, and the recorded conversation was not privileged. See State v. Wilson, 3d Dist. No. 12-05-20, 2006-Ohio-2000;State v. Berezoski (1986), 2d Dist. No. 9568, 1986 WL 14770. Further, Evid. R. 601(B) states that a spouse is competent to testify against her spouse where (1) a crime against the child of either is charged, or (2) the testifying *Page 16 
spouse elects to testify. Thus, Esther was competent to testify against Chaney because he was charged with a crime against her child.
 {¶ 31} Accordingly, we overrule Chaney's first assignment of error.
 Assignment of Error No. II {¶ 32} In his second assignment of error, Chaney contends that the trial court erred in overruling his motion in limine to exclude the recording of the telephone call on the basis that its prejudicial effect substantially outweighs its probative value. Specifically, Chaney argues that, under the circumstances of the conversation, the meaning of his statements are confusing and could mislead the jury; that his statements were speculative; and, that he is greatly prejudiced because rape accusations involving young children are highly charged, which may lead the jury to misconstrue the conversation.
 {¶ 33} Trial courts have broad discretion in determining whether to admit or exclude evidence. Deskins v. Cunningham, 3d Dist. No. 14-05-29,2006-Ohio-2003, ¶ 53, citing Huffman v. Hair Surgeons, Inc. (1985),19 Ohio St.3d 83. Accordingly, a trial court's ruling on the admissibility of evidence will not be disturbed on appeal absent an abuse of discretion. Id. See, also, State v. Robb, 88 Ohio St.3d 59, 68,2000-Ohio-275; State v. Yohey (1996), 3d Dist. No. 9-95-46,1996 WL 116144, referencing State v. Graham (1979), 58 Ohio St.2d 350 andState v. Lundy (1987), 41 Ohio App.3d 163 (ruling on motion in limine is a *Page 17 
decision to admit or exclude evidence and, therefore, subject to abuse of discretion standard).
 {¶ 34} A motion in limine is a request "that the court limit or exclude use of evidence which the movant believes to be improper, and is made in advance of the actual presentation of the evidence to the trier of fact, usually prior to trial. The motion asks the court to exclude the evidence unless and until the court is first shown that the material is relevant and proper." State v. Winston (1991), 71 Ohio App.3d 154,158. Additionally, Evidence Rule 403(A) provides that exclusion of evidence is mandatory where, "[a]lthough relevant, * * * its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Finally, we note that "[t]he evidence must cause unfair prejudice, for if the term "unfair prejudice" simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid. R. 403."State v. Bowman (2001), 144 Ohio App.3d 179, 185 (emphasis sic), citingOberlin v. Akron Gen. Med. Ctr. (2001), 91 Ohio St.3d 169, 172.
 {¶ 35} Here, Chaney contends that the probative value of the recording is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and of misleading the jury. However, we find that the recording is of great probative value, which is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Thus, the trial court *Page 18 
did not abuse its discretion in denying Chaney's motion in limine to exclude the recording.
 {¶ 36} Accordingly, we overrule Chaney's second assignment of error.
 Assignment of Error No. III {¶ 37} In his third assignment of error, Chaney contends that the trial court erred in denying his motion to instruct the jury on lesser included offenses and in failing to provide the jury with a verdict form for lesser included offenses. Specifically, Chaney argues that the trial court should have instructed the jury on sexual battery and gross sexual imposition as lesser included offenses of rape; and, that the trial court should have instructed the jury on these lesser offenses because there was no forensic or physical evidence, or witnesses other than B.C., and the telephone recording only supported the lesser included offenses.
 {¶ 38} A jury instruction on a lesser included offense is not required unless "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." State v. Douglas, 3d Dist. No. 9-05-24, 2005-Ohio-6304, ¶ 20, citing State v. Thomas (1988), 40 Ohio St.3d 213, 216. Therefore, it is within a trial court's discretion to refuse to instruct the jury on a lesser included offense. Id., citing State v. Mitchell (1990),53 Ohio App.3d 117, 119-20. Absent an abuse of discretion, the trial court's jury instruction will stand. Id. An abuse of discretion connotes more than an error of *Page 19 
law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Nagle (2000), 11th Dist. No. 99-L-089, 2000 WL 777835, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying an abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 39} Finally, errors alleged in jury instructions to which no objections were made are waived in the absence of plain error. State v.Johnson, 3d Dist. No. 16-03-09, 2004-Ohio-1513, ¶ 28, citing Crim. R. 52. In order to have plain error under Crim. R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." State v. Biros,78 Ohio St.3d 426, 431, 1997-Ohio-204; State v. Johnson, 3d Dist. No. 2-98-39, 1999-Ohio-825.
 {¶ 40} Initially, we note that, prior to trial, Chaney filed proposed jury instructions on sexual battery as a lesser-included offense of rape, which the trial court denied. Chaney did not raise, at trial or prior to trial, the issue of instructions on gross sexual imposition as a lesser-included offense of rape. As such, we will *Page 20 
review the sexual battery issue under the abuse of discretion standard and the gross sexual imposition issue under the plain error standard.
 {¶ 41} In State v. Deem (1988), 40 Ohio St.3d 205, 210, the Supreme Court of Ohio determined the applicable standard for determining when an offense is a lesser included offense of another offense. TheDeem standard provides that:
 [a]n offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
40 Ohio St.3d at 209. Additionally, in State v. Barnes,94 Ohio St.3d 21, 26, 2002-Ohio-68, the Supreme Court clarified that "the second prong of the Deem test requires us to examine the offenses at issue asstatutorily defined and not with reference to specific factual scenarios" (emphasis sic). The Supreme Court of Ohio has previously determined that both sexual battery and gross sexual imposition, as statutorily defined, are lesser included offense of rape. State v.Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 268; State v.Johnson (1988), 36 Ohio St.3d 224, paragraph one of the syllabus.
 {¶ 42} Here, Chaney contends that the trial court should have instructed the jury on sexual battery and gross sexual imposition as lesser included offenses of each count of rape. Although both sexual battery and gross sexual imposition are lesser included offenses of rape, pursuant to Douglas, this Court must examine the *Page 21 
evidence and determine whether the evidence supports an acquittal on either or both counts of rape and a conviction for sexual battery or gross sexual imposition.
 {¶ 43} Chaney was indicted for two counts of rape under R.C. 2907.02(A)(1)(b)(2), which provides that:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
 (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
As used in this statute, sexual conduct means "vaginal intercourse between a male and female; * * * cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A). Sexual battery, under R.C. 2907.03, provides that:
 (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution.
 {¶ 44} Thus, the trial court's failure to instruct the jury on sexual battery will be in error only if the jury could have reasonably found that Chaney compelled B.C. to submit to sexual conduct by coercion, but not by force or threat *Page 22 
of force. See Johnson, 2006-Ohio-6404, at ¶ 269. At trial, B.C. testified that Chaney forcibly raped her. Chaney contends, however, that the telephone recording demonstrates that there was no forcible rape. However, Chaney's admissions in the recording relate only to him making sexual contact with B.C., and he denied engaging in sexual conduct, as defined by the statute. Therefore, nothing in the record merits an instruction on sexual battery as there was no evidence that Chaney engaged in sexual conduct with B.C. by coercion, and not by force or threat of force.
 {¶ 45} Chaney also contends that, on each of the two counts of rape, the trial court should have included instructions to the jury on the lesser included offense of gross sexual imposition. Gross sexual imposition is prohibited by R.C. 2907.05, providing, in pertinent part:
 (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.
 * * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
R.C. 2907.05(A)(1), (4). Additionally, sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, *Page 23 
buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 46} As stated above, Chaney did not raise the issue of instruction on gross sexual imposition as a lesser included offense at trial, and must now demonstrate that, but for the trial court's failure to instruct the jury on gross sexual imposition as a lesser included offense of rape, the outcome at trial would clearly have been otherwise. Aside from a conclusory assertion, Chaney has presented no evidence that the outcome of his trial would clearly have been otherwise.
 {¶ 47} Accordingly, we overrule Chaney's third assignment of error.
 Assignment of Error No. IV {¶ 48} In his fourth assignment of error, Chaney contends that the trial court erred and violated his constitutional right against double jeopardy by denying his motion to dismiss the first count of rape in the indictment. Specifically, Chaney argues that both counts of rape in the indictment are identical and undifferentiated, which does not protect him from the risk of double jeopardy under Valentine v. Konteh, supra.
 {¶ 49} A criminal indictment is sufficient only if it "(1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy." Valentine, 395 F.3d at 631. Additionally, courts have found that: *Page 24 
 [w]here such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of the alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged. This is partly due to the fact that the specific date and time of the offenses are not elements of the crimes charged. Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse.
State v. Yaacov, 8th Dist. No. 86674, 2006-Ohio-5321, ¶ 17 (internal citations omitted); see, also, State v. Mundy (1994),99 Ohio App.3d 275.
 {¶ 50} In Valentine, supra, a defendant was convicted of twenty counts of rape, based on twenty identically worded indictments, and twenty counts of felonious sexual penetration, based on twenty identically worded indictments. The federal appeals court reversed all but one of the rape convictions and one of the sexual penetration convictions, finding that the prosecution "did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial." 395 F.3d at 628. Consequently, the federal court found that notice and double jeopardy issues were created because the defendant "had notice that he was charged with two separate crimes during the period of time specified in the indictment. But he had no way to otherwise identify what he was to defend against in the repetitive counts and no way to determine what charges of a similar nature could be brought against him in the future if he were re-indicted." *Page 25 395 F.3d at 628-29. Noting the lessened requirement of specificity in regards to date and time for indictments for sexual offenses against children,Valentine distinguished this case, stating that:
 [t]he problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places. If there had been singular counts of each offense, the lack of particularity would not have presented the same problem. Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made. [The defendant] was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts. In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place.
395 F.3d at 632.
 {¶ 51} However, the Valentine court also concluded that testimony or a bill of particulars differentiating the multiple counts may rectify the issues caused by identical indictments, stating that, in such a situation, "[t]he due process problems in the indictment might have been cured had the trial court insisted that the prosecution delineate the factual bases for [each separate incident] either before or during the trial." 395 F.3d at 634.
 {¶ 52} Several other courts have likewise found that a bill of particulars and/or testimony can adequately differentiate multiple counts so as to comply with due process requirements. SeeYaacov, supra (finding no due process violation where victim's testimony put each incident in a time frame, corroborating *Page 26 
evidence was presented, and the bill of particulars identified the place the offenses occurred); State v. Barrett, 8th Dist. No. 89918,2008-Ohio-2370 (finding that the trial court should have given the State the opportunity to delineate the factual bases for the separate incidents, either through discovery or at trial, and, thus, reversing the trial court's dismissal of forty identically-worded counts of rape in an indictment); State v. Crosky, 10th Dist. No. 06AP-655,2008-Ohio-145 (distinguishing from Valentine situation where the indictment differentiated multiple rape counts by time and/or type of sexual conduct, digital penetration or vaginal penetration, and where the victim's testimony provided a time frame for each offense);State v. Tobin, 2d Dist. No. 2005 CA 150, 2007-Ohio-1345 (reversing several counts of an indictment where they were identically worded in the indictment and bill of particulars, and were not distinguished by testimony).
 {¶ 53} In this case, the bill of particulars differentiated each count of rape, providing that the first count involved digital penetration and the second count involved cunnilingus. Further, although B.C. was not able to provide specific dates of when the abuse occurred, she was able to put a "time frame" on the incidents by giving her age and detailing where the abuse happened and at what address the family was living at the time. Through the bill of particulars and the testimony, the State was able to establish separate occurrences of rape by digital penetration and cunnilingus. Finally, the jury instructions reflect that the jury *Page 27 
considered digital penetration as to the first count of rape and cunnilingus as to the second count of rape. Thus, the case sub judice is distinguishable from Valentine and the trial court did not err in refusing to dismiss the first count of rape, as there is no risk of double jeopardy.
 {¶ 54} Accordingly, we overrule Chaney's fourth assignment of error.
 Assignment of Error No. V {¶ 55} In his fifth assignment of error, Chaney contends that the jury verdict was against the manifest weight of the evidence. Specifically, Chaney argues that the only evidence of rape was B.C.'s testimony; that B.C. provided false information about sexual conduct between her and another man to law enforcement in another investigation; that B.C. denied that Chaney touched her to a social worker on one occasion; that B.C. did not receive a medical examination; that there was no forensic evidence to support the rape accusations; that the recording of the telephone conversation between him and Esther was improperly admitted; and, that B.C. is a sleepwalker.
 {¶ 56} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction *Page 28 
must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 57} Here, evidence was presented that B.C. falsely informed police that she had not engaged in sexual conduct with another man in another investigation; that B.C. had once denied to a social worker that Chaney had touched her; and, that B.C. was a sleepwalker. Additionally, no medical or forensic evidence was admitted to corroborate B.C.'s accusations. However, evidence was also presented that B.C. never made false allegations of rape or sexual conduct; that B.C. told the social worker that Chaney had never touched her because they were in the same household when she was questioned; that the type of sexual conduct and contact during the time period alleged would not likely yield any medical or forensic evidence; that Chaney began touching B.C.'s breasts and rubbing her vagina from the time she was seven until she was twelve; that Chaney threatened to hurt her mother or take away her stepbrother if she told anyone; that, when she was eleven, Chaney forcibly put his finger into her vagina and forced her to engage in cunnilingus; that Esther discovered Chaney and B.C. in bed together three times; that Chaney ran away when confronted with B.C.'s accusations; that Chaney admitted to Esther that he touched B.C.'s breasts at least one time and *Page 29 
probably touched her vagina; and, that Chaney stated to Esther that he wished he had never touched B.C. Although Chaney denied engaging in sexual conduct with B.C., it is clear that the jury found B.C.'s testimony to be more credible. Based on our review of the record, we cannot say that the jury clearly lost its way. Thus, we find that Chaney's rape and gross sexual imposition convictions were not against the manifest weight of the evidence.
 {¶ 58} Accordingly, we overrule Chaney's fifth assignment of error.
 {¶ 59} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and PRESTON, J., concur. *Page 1