OPINION
{¶ 1} Defendant-Appellant, James E. Miller, appeals a judgment of the Crawford County Common Pleas Court, finding him guilty of murder and failure to comply with the order of a police officer. Miller contends that his conviction was against the manifest weight of the evidence, that the testimony of a juvenile was offered without the trial court conducting a voir dire, that his trial counsel was ineffective, that juror misconduct rendered his trial unfair, and that the aggregate of all these errors prevented a fair trial. Having reviewed the entire record and all of the evidence before us, we find no merit in any of Miller's five assignments of error. Accordingly, we affirm the judgment of the trial court.
 {¶ 2} In August of 2002, Miller was living in one half of a duplex at 226 Fellow Street ("226") in Galion, Ohio. Living with Miller at 226 was his girlfriend, Melissa Hedley, and her three children. The other half of the duplex, 224 Fellow Street ("224"), was occupied by Mike and Danielle Brady, Kevin and Melissa Stewart, and Aaron Macklin. 226 and 224 share a common porch, separated by a small iron railing.
 {¶ 3} On August 19, 2002, Miller and Melissa became involved in a domestic dispute. After a heated argument, Melissa left 226 with her children and began to walk down the street toward Justin Schiefer's house. Schiefer was her ex-brother-in-law and her children's uncle. On her way to Schiefer's house, Melissa was stopped by her neighbor directly across the street, Daniel C. Melvin. Melvin began talking to Melissa because she was visibly upset. While Melissa was talking to Melvin, one of her children, Tyler Hedley, ran up to Schiefer's house. Tyler returned with Schiefer and remained in Melvin's yard directly across the street from 224 and 226 with his mother and the other children.
 {¶ 4} After briefly talking to Melissa, Schiefer ran up to Melissa's neighbor's house at 224 and began banging on the door yelling for Miller to come outside. The only occupants of 224 at that time were the Bradys and their two children. Danielle Brady called 911 to report a possible fight between Schiefer and Miller. During her phone call to 911, Justin Schiefer was shot four times with a .22 caliber handgun. Danielle testified that neither Miller nor Schiefer entered 224 during the altercation. On the audio recording of the 911 call five shots can clearly be heard. Also on the 911 tape was a voice identified as Schiefer's screaming out the name "Jim" during the shooting. Schiefer died shortly thereafter as a result of injuries he received from the gun shots.
 {¶ 5} Police were dispatched immediately to the scene to respond to the report of gunfire. Upon arriving at the scene, police found Miller driving off in Melissa's blue convertible. They attempted to stop Miller, but he refused to pull over and led police on a fifteen minute car chase. Eventually, Miller wrecked the convertible into a utility pole and was apprehended by the police. The police found a .22 caliber handgun next to Miller on the floorboard of the convertible. The police also found five .22 caliber shell casings on the common porch of 224 and 226. Forensic evidence showed that the .22 caliber handgun found in the automobile with Miller matched all five of the shell casings found on the porch and at least one of the bullets taken from Schiefer's body.
 {¶ 6} Miller was arrested and charged with aggravated murder and failure to comply with the order of a police officer. Each charge also had a separate firearm specification. Miller pled not guilty and his case was brought before a jury for trial. During the trial, two jurors were dismissed by the court and were replaced by the two sitting alternate jurors. The first juror was replaced because he stated that he could no longer be impartial and fair, and the second juror was replaced because she lied to the court about having a family emergency to attend.
 {¶ 7} Prior to the return of a verdict, it came to the attention of the trial court that one of the jurors had purposefully driven past the crime scene without court permission. The court had previously granted a defense motion that allowed the jurors to visit the crime scene under the supervision of the court. Both the juror who drove past the crime scene and the juror who reported the infraction to the court were questioned about the incident. Both jurors told the court that the drive by added no new material information to the jury's deliberation. At that time, the trial court asked Miller whether he wanted to make a motion for a mistrial based upon juror misconduct. Miller declined, stating that he wished to bring a motion for a mistrial only if the jury returned a verdict of guilty.
 {¶ 8} The jury returned a verdict of not guilty on the charge of aggravated murder, but found Miller guilty of the lesser included offense of murder in violation of R.C. 2903.02. They also returned a verdict of guilty on the failure to comply with the order of a police officer in violation of R.C. 2921.331. The gun specifications were also found to be true for both the murder and failure to comply offenses in violation of R.C. 2941.145 and2941.141 respectively. After the verdicts were read, Miller attempted to bring a motion for a mistrial based upon the juror misconduct, but the trial court deemed that argument waived and denied the motion. From this conviction Miller appeals, presenting five assignments of error for our review.
 Assignment of Error I Defendant-Appellant's conviction is contrary to the manifestweight of the evidence.
 {¶ 9} In the first assignment of error, Miller contends that his conviction was against the manifest weight of the evidence. During the entire trial, Miller claimed that he was not the person who shot Schiefer. In this assignment of error, Miller asserts that the only evidence of his guilt in this case is Tyler's testimony, which he asserts is unbelievable and unsupported by other testimony and physical evidence.
 {¶ 10} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 11} At trial, Tyler testified that he saw Miller shoot Schiefer. Tyler was around the age of ten at the time he testified, and he had been staying with his grandmother, who was also Schiefer's mother, for some time after the shooting. All of the other witnesses at trial testified that it was too dark to make out the face of the shooter. Melvin testified that Tyler was walking away from 226 at the time of the shooting and could not possibly have seen who shot Schiefer. Furthermore, the police did not find Miller's fingerprints on the gun, and gunshot powder tests came back negative on both Miller's hands and shirt. Miller claims that Tyler's age, the fact that he lived with the victim's mother after the incident, and the fact that no other witness was able to identify the shooter, outweighs Tyler's testimony and warrants a reversal. However, all of this information was available for the jury to consider. Miller not only thoroughly cross-examined Tyler, but he presented the very same arguments herein to the jury in closing statements. We cannot say that the jury clearly lost its way in believing Tyler's testimony.
 {¶ 12} Moreover, Tyler's testimony was not the only evidence that Miller shot Schiefer. It is undisputed that Miller had been in a fight earlier with Schiefer's ex-sister-in-law, Melissa. Numerous witnesses testified that Schiefer ran down towards 226 and was yelling for Miller. Witnesses also testified that they saw gun fire coming from 226. Testimony established that Schiefer never entered 224, and Miller told the police that he was alone in 226 that night. A 911 recording coming from 224 captured the gun shots and what was identified as Schiefer's voice yelling out "Jim." Miller was captured after a fifteen minute high-speed car chase with the murder weapon next to him in the car.
 {¶ 13} Having weighed all of the evidence and drawn reasonable inferences therefrom, we find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Accordingly, we overrule Miller's first assignment of error.
 Assignment of Error II The trial court erred to the prejudice of Defendant-Appellantby allowing the testimony of Tyler Hedley.
 {¶ 14} In the second assignment of error, Miller asserts that the trial court should have conducted a voir dire into Tyler's competency before allowing him to testify. Miller maintains that the court's failure to do so constituted plain error.
 {¶ 15} Under Evid.R. 601(A), "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." When faced with a potential witness under the age of 10, the trial court must conduct a voir dire to determine whether the child is capable of testifying. State v. Frazier (1991),61 Ohio St.3d 247, 250-251, 574 N.E.2d 483.
 {¶ 16} Because Miller failed to object to Tyler's competency during the trial, our review is limited to plain error. State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. The Ohio Supreme Court has set forth a tripartite test to determine whether plain error is present: (1) there must be an error; (2) the error must be plain, i.e., the error must be an obvious defect; and (3) the error must have infringed upon substantial rights by affecting the outcome of the trial. Id; see, also,State v. Williams, 3rd Dist. No. 1-01-63, 2002-Ohio-3623, at ¶ 41. It is important to remember that the constitution does not guarantee a perfect trial, only a fair one. United States v.Hasting (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974; State v.Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293.
 {¶ 17} Herein, Miller fails to point this court to any obvious error that occurred at trial. It was never established at trial that Tyler was less than ten years of age. Thus, the need for a voir dire of his competency never arose. In fact, Miller fails to provide Tyler's age at the time of testimony even in his appellate brief. Absent some proof to the contrary, we must presume the regularity of proceedings below. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199, 400 N.E.2d 384. Accordingly, we find the trial court did not err in failing to conduct a voir dire to determine Tyler's competency and Miller's second assignment of error is overruled.
 Assignment of Error III Defendant-Appellant received prejudicially ineffectiveassistance of counsel in violation of his Sixth andFourteenth amendment rights, as well as his rights under Section 10, ArticleI, Ohio Constitution.
 {¶ 18} In the third assignment of error, Miller maintains that his trial counsel was ineffective. He claims that his trial counsel's failure to request a voir dire of Tyler's competency and failure to present evidence in mitigation of Tyler's testimony constituted ineffective assistance.
 {¶ 19} The Supreme Court has developed a two prong test for evaluating ineffective assistance of counsel claims. Stricklandv. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. Under the first prong, counsel's performance must be shown to have been deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id at 687. The second prong requires a showing that the deficient performance caused the defendant prejudice. Id. Prejudice will be found where there is a reasonable probability that, but for counsel's errors, the results of the trial would have been different. Id at 694, see, also, State v. Bradley (1989), 42 Ohio St.3d 136, 142-143,538 N.E.2d 373. The defendant has the burden of proving both prongs of this test. Lott, 51 Ohio St.3d at 175. Thus, Miller must show that his counsel erred and that, absent such error, the outcome of the trial would have been different. Moreover, he must overcome the presumption that, "the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, quoting Michel v. Louisiana (1955), 350 U.S. 91, 101,76 S.Ct. 158.
 {¶ 20} Miller claims that his trial counsel erred by failing to request a voir dire into Tyler's competency to testify and by failing to challenge Tyler's testimony. As discussed above in our analysis of Miller's second assignment of error, there is no evidence that Tyler was under the age of ten at the time of his testimony. As such, there was no duty on the part of the trial court to conduct a voir dire of his competency, and Miller's trial counsel did not err in failing to request such a voir dire.
 {¶ 21} Furthermore, there is ample evidence in the record showing an attempt on the part of Miller's attorney to discredit Tyler and his testimony. Miller's counsel vigorously cross-examined Tyler, he called Melvin as a witness, who testified that Tyler could not possibly have seen the shooting take place, and he pointed out the inconsistencies of Tyler's testimony to the jury extensively during closing arguments. We find nothing in the record to imply that Miller's trial counsel made such serious errors that he was not functioning as the `counsel' guaranteed to Miller by the Sixth Amendment. Miller suggests that his trial counsel's failure to call an expert witness to testify on the reliability of child witnesses constituted ineffective assistance. The Ohio Supreme Court has previously ruled on this issue stating, "the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." State v. Hartman (2001),93 Ohio St.3d 274, 299, 754 N.E.2d 1150, quoting, State v.Nicholas (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225, citingState v. Thompson (1987), 33 Ohio St.3d 1, 10-11,514 N.E.2d 407.
 {¶ 22} Having reviewed the entire record, we find that Miller's trial counsel was not ineffective in dealing with Tyler's testimony. Therefore, we overrule Miller's fourth assignment of error.
 Assignment of Error IV Juror misconduct rendered Defendant-Appellant's trial unfairin violation of the constitutions of Ohio and the United States.
 {¶ 23} In the fourth assignment of error, Miller challenges his conviction based upon juror misconduct. Specifically, Miller asserts that he was biased by the replacement of two jurors during the trial with alternate jurors and one of the sitting juror's personal investigation of the crime scene during jury deliberations.
 {¶ 24} Crim.R. 24(F)(1) states that "[a]lternate jurors * * * shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties." It is within the trial court's discretion to decide when to replace a seated juror with an alternate juror. State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, 804 N.E.2d 433, at ¶ 80-82. "In cases involving outside influences on jurors, trial courts are granted broad discretion in * * * determining whether to declare a mistrial."State v. Herring (2002), 94 Ohio St.3d 246, 259,762 N.E.2d 940, quoting State v. Phillips, 74 Ohio St.3d 72, 89,656 N.E.2d at 661. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. Additionally, Miller's "failure to raise a claim of juror bias until after trial, when the issue of potential bias was known by the defendant during trial, amounts to a waiver of the claim." State v. Tefft (April 9, 1993), 3rd Dist. No. 13-92-38, unreported.
 {¶ 25} Nothing in the record herein indicates that the trial court abused its discretion in replacing the two sitting jurors with alternate jurors. The first juror told the court that he could no longer serve as impartial, but that he had not indicated this to any of the other jurors. The second juror lied to the court about being able to attend the trial. The decision to replace these jurors can not be said to be unreasonable, arbitrary or unconscionable.
 {¶ 26} In response to the juror who drove past the crime scene, the trial court questioned both the juror who drove past the crime scene and the juror who reported the infraction to the court. All of the jurors had previously been allowed to view the crime scene in person under court supervision. Both jurors questioned by the court stated that the drive by had not added any new material information or discussion to the jury deliberations. We can not say that it was an abuse of the trial court's discretion to fail to declare a mistrial. Furthermore, Miller waived any possible error when he declined to request a mistrial until after the verdict was read.
 {¶ 27} A review of the record reveals that the trial court did not abuse its discretion in dealing with the jury abnormalities. Accordingly, we overrule Miller's fourth assignment of error.
 Assignment of Error V The combination of the aforementioned errors are sufficient tocall into question the validity of the verdict, preventing theappellant from obtaining the fair trial guaranteed by the Fifthand Sixth amendments to the U.S. Constitution as made applicableto the states by the Fourteenth amendment, and Article One,Sections Ten and Sixteen of the Ohio Constitution.
 {¶ 28} In the fifth assignment of error, Miller contends that the aggregate of all the above errors caused his trial to be fundamentally unfair under the United States and Ohio Constitutions. As discussed above in each separate assignment of error, we found no merit in any of Miller's claims. We were unable to identify even a single "error" from which a combination of errors could possibly be formed. As the Ohio Supreme Court has stated, "we have held that appellant's propositions fail to establish errors and, therefore, we fail to see how the absence of error can constitute cumulative error." State v. Moreland
(1990), 50 Ohio St.3d 58, 69, 552 N.E.2d 894. Consequently, Miller's fifth assignment of error is overruled.
 {¶ 29} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Shaw, P.J., and Cupp, J., concur.