OPINION
{¶ 1} Defendant-Appellant, Shawn Lester, appeals the judgment of the Putnam County Court of Common Pleas convicting him of rape, sentencing him to a ten-year prison term, and classifying him as a sexual offender. On appeal, Lester asserts that the trial court erred when it denied his request for a jury instruction on sexual battery; that the trial court erred when it failed to assess the victim's competence to testify; that prosecutorial misconduct denied him a fair trial; that the trial court erred when it showed bias in favor of the State; that the trial court erred when it admitted testimony of the victim's doctor; that the trial court erred when it admitted testimony of the victim's special education teacher; and, that trial counsel was ineffective. Based upon the following, we affirm the judgment of the trial court.
 {¶ 2} In February 2008, a Putnam County Grand Jury indicted Lester on one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. The indictment arose from allegations that Lester forcibly engaged in sexual conduct with S.R., a fifteen year-old cognitively disabled girl.
 {¶ 3} In March 2008, Lester filed a plea of not guilty and a plea of not guilty by reason of insanity. *Page 3 
 {¶ 4} In April 2008, Lester filed a motion requesting a jury instruction on sexual battery as a lesser included offense of rape. Additionally, the trial court held a hearing and found Lester competent to stand trial. Subsequently, Lester withdrew his plea of not guilty by reason of insanity.
 {¶ 5} Thereafter, the case proceeded to trial at which the following testimony was heard.
 {¶ 6} Sixteen year-old Katie Gonzales testified that S.R. was her best friend; that she and S.R. often "hung out" and spent the night at their friend Evonne Delgado's house; that Lester, Delgado's uncle, lived in the same house; that the girls had been going to Delgado's and Lester's house for more than a year; that Lester told her twice that he wanted to have sex with S.R.; that S.R. never commented to her about being interested in Lester; that Lester would sometimes touch S.R.'s breasts and buttocks; that S.R. would smack him or his hands when he did this and tell him to stop; and, that Lester would respond by laughing and smiling.
 {¶ 7} Gonzales continued that, on December 27, 2007, she and S.R. were at Delgado's and Lester's house and planned to spend the night; that Lester arrived at the house and the girls went into his bedroom with him to listen to music; that she and Delgado eventually left the bedroom and went to the kitchen to get something to eat, while S.R. remained in the bedroom; that, at the time, she was *Page 4 
not concerned about leaving S.R. alone with Lester; that, after about twenty minutes, she went back to Lester's bedroom to find the door locked; that she knocked three times with no answer; that she went back to the kitchen and retrieved a utensil with which to unlock the door; that she unlocked the door and kicked it open; that she saw Lester laying on top of S.R. with his legs between hers; that Lester was not wearing pants and S.R.'s pants were down to her feet; that she observed that S.R. was crying and had tears streaming down her face; and, that Lester then jumped off S.R.
 {¶ 8} Gonzales continued that she ran to Delgado and told her what she had seen; that she and Delgado ran back to Lester's room to find S.R. running out of the room, shaking, and Lester getting dressed; that Delgado began yelling at Lester "what the fuck are you thinking * * * she's just a minor, what is your problem" (trial tr., vol. I, p. 165); that Lester just looked at her and smiled; that she found S.R. in the living room and "she was terrified" and would only say that she wanted to go home (Id. at 166); that she accompanied S.R. home; that S.R. begged her not to tell anyone, and she promised that she would not; and, that S.R. later told her that she was concerned about being pregnant. Gonzales further testified that, approximately two weeks after the incident, she knew S.R. was not sleeping and was having nightmares, so she told her mother, who contacted the police. *Page 5 
 {¶ 9} Delgado testified that S.R. was her best friend and Lester was her uncle; that, at the time of the incident, she lived in a house with Lester; that, on December 27, 2007, Gonzales and S.R. were at her and Lester's house where they planned to spend the night; that she, Gonzales, and S.R. were in Lester's bedroom listening to music when she and Gonzales left to get something to eat; that, at some point thereafter, Gonzales went to check on S.R. and "walked in on" Lester and S.R.; that Gonzales told Delgado "don't go in there," but she went into the room and saw Lester pulling up his pants; and, that S.R. came out of the room and was crying and said she wanted to go home. Delgado continued that, approximately one week after the incident, she spoke to Lester about the incident and told him that "if [S.R.] said it was rape, he could get in trouble, but he said no, I won't get caught" (Id. at 186); and, that she gave the police a second written statement that "I was telling Shawn he was going to get in trouble for raping [S.R.] and he just said he would not get caught." (Id.).
 {¶ 10} Officer Tammy Griffith of the Ottawa Police Department testified that she investigated the rape allegation against Lester; that she went to S.R.'s high school to interview her; that S.R. was not given a "heads up" that the police knew of the incident or that an interview was going to occur; that her first question to S.R. was if she knew who Lester was; that, in response to her question, S.R. began shaking and "instantly started squirming, kind of got teary eyed" and said that *Page 6 
Lester was her best friend's uncle (Id. at 204); that she also interviewed Delgado, who informed her that Lester stated to her that he was not going to get into trouble because he was not going to get caught; that she arrested Lester and questioned him about the incident; that Lester initially told her that he did not rape or have consensual sex with S.R., and that he was not even at the house; and, that, once he was in the police car, he told her that he was at the house, but didn't do anything.
 {¶ 11} Julie Brooks testified that she was S.R.'s high school special education teacher; that she taught S.R. special education classes in English and math, but that S.R. took all other classes with the general high school population; that S.R. required special education in English because she had "a lower IQ," did not understand age-appropriate vocabulary, and had vocabulary skills comparable to an eight or nine year-old child (Id. at 227); that, if S.R. did not understand what was going on in the classroom, she would often "just wait for the period to pass, * * * so she can move on to the next thing rather than asking for help" (Id. at 229); that, from her personal observations, S.R. often depended on others and required assistance; and, that, from her personal experience with S.R., she would be surprised if S.R. knew the meaning of the words "consensual" or "consent." Brooks continued that, on a task like obtaining a driver's license, S.R. would need someone to "walk her through" the process, unlike a typical fifteen year-old (Id. at 234); that, even in the classes she took with the general population, S.R. required *Page 7 
tutoring and modified content; that any I.Q. under seventy is considered mentally retarded; and, that she believed S.R. had an I.Q. in the sixties.
 {¶ 12} S.R. testified that she often spent the night at Delgado's and Lester's house with her friends; that Lester was sometimes at the house when the girls were there; that, in the past, Lester had made her feel uncomfortable by rubbing her arm or leg, and by putting his hand in her shirt; that she would ask him to stop when he did these things; that she never told anyone that she liked Lester or "had a crush on" him; that she had hugged Lester "as a friend" before, but never kissed him (Id. at 264); and, that she never liked Lester as a boyfriend and he always made her feel uncomfortable.
 {¶ 13} S.R. continued that, on December 27, 2007, she was at Delgado's and Lester's house to spend the night with her friends; that she, Gonzales, and Delgado listened to music in Lester's room; that Gonzales and Delgado left to make food and she attempted to go with them, but Lester pulled her back into his bedroom by her sleeve and shut and locked the door; that Lester pushed her down on his bed and unbuttoned her pants and pulled them down; that she told Lester "I don't want to do this" and he said "it would be all right" (Id. at 247); that Lester got undressed and put his hands on her shoulders and his feet around her ankles; that she tried to get up, but he pushed her back down; that she again told him she didn't "want to do this" and he told her he would not hurt her (Id. at 248); that she *Page 8 
started crying; that Lester proceeded to put his penis "in her"; and, that she told Lester to stop, but he told her to "just ignore it." (Id. at 249).
 {¶ 14} S.R. continued that she saw Gonzales open the door, and Lester jumped off her; that she was still crying and tried to get up to put on her pants; that Lester told her "keep this a secret and just deny it if anybody asks you," and she ran out of the room crying (Id. at 251); and, that she told Gonzales that she wanted to leave and go home. S.R. continued that, when she was in the bedroom with Lester, she did not scream; that she did not call the police after the incident because she was scared and "didn't know how to put it," which she explained meant that she did not know the word "rape" or how to describe what Lester did to her, except that she knew he did "a bad thing" to her. (Id. at 253).
 {¶ 15} Thereafter, the State announced that it had concluded its direct examination of S.R., and the trial court requested that counsel approach the bench. The following exchange then took place out of the hearing of the jury:
 THE COURT: * * * I've asked counsel to approach the bench and inquire of the State of Ohio whether or not the State of Ohio has met the burden of establishing factually the element of sexual conduct and vaginal intercourse, the instruction being that between male and a female, that that [sic] entails the insertion of a penis into a vagina. The statement by this witness was that the penis was, I believe her statement put in her. It is my understanding that the State, based upon that inquiry, is asking to reopen the direct examination[?] * * *
 {¶ 16} THE STATE: Yes, your Honor.
 {¶ 17} THE COURT: [Lester's counsel?] *Page 9 
 [LESTER'S COUNSEL]: And the defense is objecting to the Court, one, pointing it out to the State and then to allowing the State to reopen to satisfy the element.
 THE COURT: I'm overruling that objection and I'm allowing the reinquiry.
(Id. at 254-255).
 {¶ 18} The State's questioning then resumed and, upon reinquiry, S.R. testified that Lester put his penis into her vagina; that it hurt; that it felt wet in the area and she did not know if Lester ejaculated, but that she believed the wetness was from him; and, that she felt very stressed after the incident because she had been raped. S.R. continued that she had previously stated that she was not certain if Lester put his penis in her vagina because she had never engaged in sexual intercourse before; that she was very concerned about being pregnant after the incident, which she relayed to her doctor; and that, during the incident, she heard someone knocking on the door to Lester's bedroom, but that she did not say anything because Lester told her to be quiet.
 {¶ 19} Dr. Mandy Klass testified that, on January 25, 2008, she examined S.R. when her mother brought her in for pregnancy testing; that S.R. described "that she was visiting her friend Evonne, and at some point was pinned to the bed in some sort of locked room, and that he, whoever the perpetrator was, place[d] his penis up in [her] and afterwards [she] felt very wet" (trial tr., vol. II, p. 13); that S.R. then indicated what she meant by pointing to her vaginal area; that S.R. told *Page 10 
her that she was a virgin prior to the incident; and, that she performed a pelvic exam on S.R. and determined that her hymen was not intact.
 {¶ 20} Brittany Warnecke testified that she was friends with Delgado and Gonzales; that she was friends with S.R. up until one week prior to trial, but they were no longer friends; that she believed she was at trial "to testify against [S.R.]" (Id. at 35); that, in January 2007, she became aware that S.R. was having problems, asked about it, and S.R. told her that "she had sex with Shawn Lester" (Id.); and, that S.R. told her this calmly and wasn't "like upset or anything like that." (Id. at 39).
 {¶ 21} Thereafter, the jury found Lester guilty of rape as charged in the indictment. The trial court then sentenced Lester to a ten year prison term, and classified him as a Tier III sex offender.
 {¶ 22} It is from this judgment that Lester appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED, OVER OBJECTION, MR. LESTER'S REQUEST FOR A JURY INSTRUCTION REGARDING THE LESSER INCLUDED OFFENSE OF SEXUAL BATTERY, R.C. 2907.03, IN VIOLATION OF MR. LESTER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (TRIAL TR., VOL. I, PP. 139, 152, 172-73, *Page 11 183, 195; TRIAL TR., VOL. II, PP. 38-39, 42-46, 55, 227, 229, 231, 234, 239-40).
 Assignment of Error No. II THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO ASSESS THE ALLEGED VICTIM'S COMPETENCY TO TESTIFY AND ALLOWED THE ALLEGED VICTIM TO TESTIFY AGAINST MR. LESTER AT TRIAL, IN VIOLATION OF MR. LESTER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (DOCKET 20, SCHOOL EVALUATIONS; TRIAL TR., VOL. I, PP. 231, 241-271).
 Assignment of Error No. III THE PROSECUTOR'S MISCONDUCT DENIED MR. LESTER A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF MR. LESTER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (DOCKET 14, JAN. 23, 2008, STATEMENT OF WITNESS; DOCKET 20, FEB. 20, 2008, STATEMENT OF WITNESS; TRIAL TR., VOL. I, PP. 150, 185-86; TRIAL TR., VOL. II, PP. 51-54, 64-65).
 Assignment of Error No. IV THE TRIAL COURT INJECTED STRUCTURAL ERROR INTO MR. LESTER'S TRIAL WHEN IT SHOWED BIAS IN FAVOR OF THE STATE OF OHIO, AND ABANDONED ITS DUTY TO REMAIN NEUTRAL AND IMPARTIAL, IN VIOLATION OF MR. LESTER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (TRIAL TR., VOL. I, PP. 254-55; TRIAL TR., VOL. II, P. 23). *Page 12 
 Assignment of Error No. V THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE TESTIMONY OF DR. KLASS, WHICH WAS USED BY THE STATE TO BOLSTER THE TESTIMONY OF THE ALLEGED VICTIM, AND FELL OUTSIDE THAT WHICH WAS PERMISSIBLE UNDER EVID.R. 702. THE TESTIMONY'S PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT. EVID.R. 403(A). THE ERRONEOUS ADMISSION OF THIS EVIDENCE DEPRIVED MR. LESTER OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (TRIAL TR., VOL. II, PP. 3-22).
 Assignment of Error No. VI THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ALLOWED THE ALLEGED VICTIM'S SPECIAL EDUCATION TEACHER TO PROVIDE SUBSTANTIALLY PREJUDICIAL TESTIMONY WITH LIMITED PROBATIVE VALUE AT TRIAL, IN CONTRAVENTION OF EVID.R. 403(A), AND ALLOWED THE ALLEGED VICTIM'S SPECIAL EDUCATION TEACHER TO PROVIDE TESTIMONY BEYOND THAT WHICH IS ALLOWED FOR A LAY WITNESS, IN VIOLATION OF EVID.R. 701, AND IN VIOLATION OF MR. LESTER'S FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE 1 OF THE OHIO CONSTITUTION. (TRIAL TR., VOL. I, PP. 195, 225-41).
 Assignment of Error No. VII TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF MR. LESTER'S RIGHTS UNDER THE FIFTH, SIXTH, AND *Page 13 FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION. (TRIAL TR., VOL. II, PP. 33-39; ASSIGNMENT OF ERROR II, SUPRA, DOCKET 20, SCHOOL EVALUATIONS; TRIAL TR., VOL. I, PP. 231, 241-271).
 Assignment of Error No. I {¶ 23} In his first assignment of error, Lester argues that the trial court erred when it denied his request for a jury instruction on sexual battery as a lesser included offense of rape. Specifically, Lester contends that the jury could have reasonably found that he compelled S.R. to submit to sexual conduct by coercion, as opposed to force or threat of force, because Brooks testified that S.R. had a passive personality and because Warnecke testified that S.R. was not upset about the incident. We disagree.
 {¶ 24} Errors alleged in jury instructions to which no objections were made are waived in the absence of plain error. State v. Johnson, 3d Dist. No. 16-03-09, 2004-Ohio-1513, ¶ 28, citing Crim. R. 52. In order to have plain error under Crim. R. 52(B), there must be an error, the error must be an "obvious" defect in the trial proceedings, and the error must have affected "substantial rights." State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id. Plain error exists only in the event that it can be said that "but for the error, the outcome of the trial would clearly have been otherwise." *Page 14 
 State v. Biros, 78 Ohio St.3d 426, 431, 1997-Ohio-204; State v.Johnson, 3d Dist. No. 2-98-39, 1999-Ohio-825.
 {¶ 25} Initially, we note that Lester did not object to the trial court's denial of his request for an instruction on sexual battery. Accordingly, we will review his argument under the plain error standard.
 {¶ 26} In State v. Deem (1988), 40 Ohio St.3d 205, 210, the Supreme Court of Ohio set forth the applicable standard for determining when an offense is a lesser included offense of another. The Deem standard provides as follows:
 [a]n offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.
40 Ohio St.3d at 209. Additionally, in Barnes, 94 Ohio St.3d at 26, the Supreme Court clarified that "the second prong of the Deem test requires us to examine the offenses at issue as statutorily defined and not with reference to specific factual scenarios" (Emphasis sic). The Supreme Court of Ohio has previously determined that sexual battery, as statutorily defined, is a lesser included offense of rape. State v.Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 268; State v.Chaney, 3d Dist. No. 13-07-30, 2008-Ohio-3507.
 {¶ 27} However, "`[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both *Page 15 
offenses where the greater offense is charged.'" State v. McMeen, 3d Dist. No. 5-82-14, 1983 WL 7344, quoting State v. Wilkins (1980), 64 Ohio St.2d 382, 387. A jury instruction on a lesser included offense is not required unless "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense." State v. Douglas, 3d Dist. No. 9-05-24,2005-Ohio-6304, ¶ 20, citing State v. Thomas (1988), 40 Ohio St.3d 213,216.
 {¶ 28} The offense of rape under R.C. 2907.02(A)(2), provides that, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." As used in R.C.2907.02, "sexual conduct" means "vaginal intercourse between a male and a female; * * * [and p]enetration, however slight, is sufficient to complete vaginal * * * intercourse." R.C. 2907.01(A). The offense of sexual battery, under R.C.2907.03, provides that, "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (1) The offender knowingly coerces the other person to submit by any means that would prevent resistance by a person of ordinary resolution." Accordingly, under Douglas, a trial court's failure to instruct the jury on sexual battery as a lesser included offense of rape will be error only if the jury could have reasonably found *Page 16 
that the defendant compelled the victim to submit to sexual conduct by coercion, but not by force or threat of force. See Chaney,2008-Ohio-3507, at ¶ 44.
 {¶ 29} In State v. Malin, 9th Dist. No. 97CA006898, 1999 WL 1775, Malin, a defendant convicted of rape, argued on appeal that the trial court erred in failing to instruct the jury on sexual battery as a lesser included offense of rape. Malin's defense at trial was premised on alleged absence of force. The Ninth District observed that:
 Even if the jury had accepted defendant's position that he had not forced the victim to submit to sexual activity, but believed that defendant had engaged in sexual conduct with the victim, that element of rape alone would not, by itself, constitute sexual battery. The jury would still need to find that defendant had knowingly coerced the victim to submit to sexual conduct by some means that would prevent resistance by a person of ordinary resolution.
 {¶ 30} The Ninth District proceeded to sustain Malin's conviction, finding that:
 Although coercion can be shown by means other than force or threats of force, there was no other theory of coercion advanced, nor was there evidence of any other form of coercion, in this case. If the jury had not found force or threat of force based on the evidence, it could not have found coercion.
 {¶ 31} In the case before us, S.R. testified that Lester forced her to engage in sexual conduct. Although Lester did not testify at trial, his defense, as indicated in his opening statement and closing argument, was premised on an alleged absence of force. Lester's defense advanced no theory of coercion and presented *Page 17 
no evidence of coercion at trial. Although Lester contends on appeal that coercion was evinced by Brooks' testimony that S.R. had a passive personality and Warnecke's testimony that S.R. calmly described the incident, we find that this was not evidence that Lester compelled S.R. to submit to sexual conduct by coercion. Consequently, the trial court did not err in declining to instruct the jury on sexual battery as a lesser included offense of rape.
 {¶ 32} Accordingly, we overrule Lester's first assignment of error.
 Assignment of Error No. II {¶ 33} In his second assignment of error, Lester contends that the trial court erred when it failed to assess S.R.'s competence to testify and permitted her to testify at trial. Specifically, Lester argues that the record contains clear indications that S.R. suffered from cognitive disabilities rendering her unfit to testify, including her low I.Q. and inability to use or understand age-appropriate vocabulary. We disagree that S.R.'s disabilities rendered her unfit to testify.
 {¶ 34} Trial courts have broad discretion in determining the competence of a witness, as they are "in the best position to observe the witness and judge her ability to relate facts accurately, to understand the difference between the truth and a lie, and to appreciate the responsibility of telling the truth." State v. Hardie, 2d Dist. No. 19954, 2004-Ohio-6783, ¶ 12, citing State v. McNeill, 83 Ohio St.3d 438,442, 1998-Ohio-293. Additionally, where a defendant fails to object to a witness' *Page 18 
competence at trial, an appellate court's review is limited to plain error analysis. State v. Miller, 3d Dist. No. 3-03-26, 2004-Ohio-1947, ¶ 16.
 {¶ 35} Initially, we note that Lester failed to object to S.R.'s competence at trial. Consequently, we review his argument under the plain error analysis set forth in our analysis of his first assignment of error.
 {¶ 36} Pursuant to Evid. R. 601(A), the general rule of competence is that "[e]very person is competent to be a witness except * * * [t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." "Evid. R. 601(A) contemplates several characteristics, which can be broken down into three elements: first, the individual must have the ability to receive accurate impressions of fact; second, the individual must be able to accurately recollect those impressions; third, the individual must be able to relate those impressions truthfully." State v.Grahek, 8th Dist. No. 81443, 2003-Ohio-2650, ¶ 25, citing State v.Said (1994), 71 Ohio St.3d 473.
 {¶ 37} The term "unsound mind," as used in Evid. R. 601(A), includes all forms of mental retardation. R.C. 1.02(C). Mental retardation, however, does not conclusively render a witness incompetent to testify.Grahek, 2003-Ohio-2650, at ¶ 24, citing State v. Bradley (1989),42 Ohio St.3d 136. As the Supreme Court of Ohio has stated, "`a person, who is able to correctly state matters which have come *Page 19 
within his perception with respect to the issues involved and appreciates and understands the nature and obligation of an oath, is a competent witness notwithstanding some unsoundness of mind.'"Bradley, 42 Ohio St.3d at 141, quoting State v. Wildman (1945),145 Ohio St. 379, paragraph three of the syllabus.
 {¶ 38} In Grahek, supra, a defendant argued that the trial court erred when it did not inquire into a rape victim's competence to testify when she had an I.Q. of sixty-seven and could not recall the frequency of multiple rapes occurring from the time she was twelve until she was fourteen. The Appellate Court found that the trial court did not err because the victim was eighteen years old at the time of trial and was able to recall many details regarding the rapes including the locations of the rapes, the physical pain she experienced during the rapes, the remarks the defendant made during the rapes, and the manner in which the defendant forced her to remove her clothes. The trial court concluded that her detailed accounts of the rapes reflected her ability to receive, recollect, and relate facts truthfully — thus, the trial court had no duty to inquire into her competence. See, also, State v.Miller (1988), 44 Ohio App.3d 42; Compare State v. Kinney (1987),35 Ohio App.3d 84 (finding that trial court had a duty to inquire into competence of ten year-old rape victim where the victim's mother testified that her I.Q. was below *Page 20 
fifty-eight and she had a tendency to make up stories, and a police officer testified that the victim confused the rape with a separate incident during an interview).
 {¶ 39} Here, S.R.'s testimony demonstrated that she was able to recall that Gonzales and Delgado were her friends; that the incident occurred in Lester's bedroom; that Lester had inappropriately touched her in the past; that she and her friends had been listening to music in Lester's bedroom before the incident; the statements that Lester made to her during and immediately after the incident; the manner in which Lester restrained her with his hands on her shoulders and his feet around her ankles; the sensations of physical pain and wetness; that she heard someone knocking on the door during the incident; and, that she feared she had become pregnant due to the incident. We find that S.R.'s vivid account of the rape reflected her ability to receive, recollect, and relate facts truthfully. Additionally, we note that, although testimony was presented that S.R. had cognitive disabilities and a below average I.Q., testimony was also presented that S.R.'s mental retardation was mild and that she only required special education classes in English and math, taking all other classes with the general population. Finally, although testimony was heard that S.R. had the vocabulary skills of an eight or nine year-old child, nothing suggested that her disability affected her ability to receive, recollect, and relate facts truthfully. Thus, we conclude that the trial court did not err in declining to inquire into S.R.'s competence. *Page 21 
 {¶ 40} Accordingly, we overrule Lester's second assignment of error.
 Assignment of Error No. III {¶ 41} In his third assignment of error, Lester contends that he was denied a fair trial due to prosecutorial misconduct. Specifically, Lester argues that he was prejudiced because the prosecutor expressed his personal opinion, vouched for the credibility of State witnesses, and mischaracterized the evidence contained in the record. We disagree.
 {¶ 42} The test for prosecutorial misconduct during opening statements and closing arguments is whether the remarks made by the prosecutor were improper and, if so, whether they prejudicially affected a substantial right of the accused. State v. White, 82 Ohio St.3d 16, 22,1998-Ohio-363. In opening statements and closing arguments, prosecutors are entitled to some latitude regarding what the evidence has shown and the inferences that can be drawn State v. Ballew, 76 Ohio St.3d 244,255, 1996-Ohio-81. "`It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused.'" State v. Van Meter (1998),130 Ohio App.3d 592, 601, quoting State v. Williams (1997), 79 Ohio St.3d 1, 12. However, "[a] prosecutor may state his opinion if it is based on the evidence presented at trial." State v. Watson (1991), 61 Ohio St.3d 1,10, abrogated on other grounds by State v. McGuire, 80 Ohio St.3d 390,1997-Ohio-335. Additionally, we review a prosecutor's opening *Page 22 
statement and closing argument in its entirety. Id. If, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper remarks, then the trial will not be deemed unfair. State v. Tenace,109 Ohio St.3d 255, 2006-Ohio-2417, at ¶ 45, citing State v. Treesh,90 Ohio St.3d 460, 464, 2001-Ohio-4. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." (Citation omitted.) State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658, ¶ 140.
 {¶ 43} First, Lester challenges the prosecutor's closing argument, which included the following statements: "In this case, if you believe [S.R.'s] testimony, the right result here is to convict the defendant of rape. And I don't believe we heard any reason not to believe her testimony"; "We know that [S.R.] is telling us the truth"; "We know the events after are all factual. There has been nothing given to you to suggest that [S.R.'s] version is anything but the truth"; "There is no reason in this case to reject [S.R.'s] testimony, everyone else corroborates it"; and, that "there is no reason to dispute the testimony of what occurred within the walls of [Lester's] bedroom." (Trial Tr., Vol. II, pp. 51-54, 64-65). Lester contends that these comments prejudicially suggested to the jury that the prosecutor believed the testimony of the State's witnesses. However, after reviewing the closing argument in its entirety, we find that the prosecutor's statements were reasonably based on the evidence presented at trial. Moreover, *Page 23 
even had the remarks been improper, we find it clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the remarks.
 {¶ 44} Next, Lester challenges the prosecutor's opening statement that, "Within a few days after the incident, one of [Lester's] own family members [Delgado] went up to him and said to the defendant, you're going to get in trouble for raping [S.R.], to which he replied no, I won't get caught." (Trial Tr., Vol. I, p. 150). Lester contends that this assertion was unsupported by either of the statements that Delgado gave to law enforcement. Regardless of whether Delgado or the interviewing police officer wrote down the statement, Delgado testified that she made this exact statement in her second written statement to the police. Thus, the prosecutor's statement was appropriate.
 {¶ 45} Accordingly, we overrule Lester's third assignment of error.
 Assignment of Error No. IV {¶ 46} In his fourth assignment of error, Lester contends that the trial court committed structural error when it showed bias in favor of the State and abandoned its duty to remain neutral and impartial. Specifically, Lester argues that the trial court's act of calling both counsel to the bench, questioning whether the State had proven the element of sexual intercourse, and then permitting the State to reopen direct examination to show this element, demonstrated that the trial judge was biased and rendered the trial fundamentally unfair. We disagree. *Page 24 
 {¶ 47} Evid. R. 611(A) provides that a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to * * * make the interrogation and presentation effective for the ascertainment of the truth[.]" Under this rule, a trial court has discretion to permit a party to reopen his case and submit further evidence after he has rested "when the circumstances warrant such relief," even though a party generally does not have that right. Pisanick-Miller v. Roulette Pontiac-Cadillac GMC, Inc. (1991),62 Ohio App.3d 757, 761, citing 89 Ohio Jurisprudence 3d (1989) 188, Trial, Section 151. "The general rule in Ohio [is] that the question of opening up a case for the presentation of further testimony is within the sound discretion of the trial court, and the court's action in that regard will not be disturbed on appeal unless under the circumstances it amounted to an abuse of discretion." Columbus v. Grant (1981),1 Ohio App.3d 96, 97.
 {¶ 48} Additionally, it is the duty of a trial court to maintain an appearance of impartiality, and a trial judge may not advocate for or materially assist one party at the expense of the other.Mentor-on-the-Lake v. Giffin (1995), 105 Ohio App.3d 441, 449;Disciplinary Counsel v. O'Neill, 103 Ohio St.3d 204, 2004-Ohio-4704, ¶ 13. Further, although "[a] judge abuses his discretion when he plays the part of an advocate, * * * the rule is not so restrictive that [a] judge is not permitted to participate in a search for the truth."Klasa v. Rogers, 8th Dist. *Page 25 
No. 83374, 2004-Ohio-4490, ¶ 34, citing State v. Kight, 4th Dist. No. 682,1992 WL 226352.
 {¶ 49} Here, we find that the trial court was within its discretion to permit the State to reopen its direct examination of S.R. for the purpose of clarifying her earlier testimony to demonstrate more clearly the element of sexual intercourse. Additionally, we find that the trial court did not abuse its discretion in calling to the State's attention the fact that the element of sexual intercourse had not clearly been shown by S.R.'s prior testimony. The trial court was not "playing the part of an advocate," but merely participating in the search for truth and acting in the interests of justice. Moreover, the trial court called counsel to the bench for the discussion out of the hearing of the jury. Thus, the trial court clearly did not create an appearance of partiality to the jury.
 {¶ 50} Accordingly, we overrule Lester's fourth assignment of error.
 Assignment of Error No. V {¶ 51} In his fifth assignment of error, Lester contends that the trial court erred when it admitted Dr. Klass' testimony because it went beyond the boundaries of Evid. R. 702 and its probative value was substantially outweighed by its prejudicial effect pursuant to Evid. R. 403(A). Specifically, Lester argues that Dr. Klass should not have been permitted to testify about S.R.'s statements concerning the incident because the testimony was not based on reliable scientific, *Page 26 
technical, or specialized information, and was used entirely to corroborate S.R.'s testimony at trial. Additionally, Lester argues that the testimony was unfairly prejudicial under Evid. R. 403(A) because S.R.'s account of the incident did not concern her medical treatment. We disagree.
 {¶ 52} The admission or exclusion of evidence "lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." State v. Kesler, 3d Dist. No. 13-06-09,2006-Ohio-6340, ¶ 33. Accordingly, our review is limited to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably. Id., citing Barnes, 94 Ohio St.3d at 23.
 {¶ 53} Evid. R. 702 governs expert testimony and provides that a witness may testify as an expert if:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *
 {¶ 54} Additionally, "`[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the *Page 27 
truth of the matter asserted." Evid. R. 801(C). Evid. R. 801(D)(1)(b) explains that a prior statement of a witness is not hearsay if:
 The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive[.]
 {¶ 55} Finally, evidence must be excluded where its probative value is substantially outweighed by the danger of unfair prejudice. Evid. R. 403(A). As this Court has previously stressed, "`[t]he evidence must cause unfair prejudice, for if the term "unfair prejudice" simply meant prejudicial or unfavorable, anything adverse to a litigant's case would be excluded under Evid. R. 403.'" (Emphasis sic.) Chaney, 2008-Ohio-3507, ¶ 34, quoting State v. Bowman (2001), 144 Ohio App.3d 179, 185.
 {¶ 56} Here, Lester first argues that Dr. Klass should not have been permitted to testify as to S.R.'s statement concerning the incident because the testimony was not based on reliable scientific, technical, or specialized information. However, Dr. Klass' testimony was permissible because S.R. made the statement about the incident to her, and the statement was properly admitted as a prior consistent statement of a witness. During cross examination, Lester's counsel inquired of S.R. whether she had discussed losing her virginity with her friends; whether she ever kissed or hugged Lester; whether she touched and *Page 28 
whispered with Lester when they were "hanging out"; whether Lester told her he wanted her to be his girlfriend; and, why she did not scream for help during the incident. We find that these questions implied that S.R. consented to sexual conduct with Lester, and thus, that she had recently fabricated the rape accusation. Additionally, S.R. testified at trial, was subject to cross-examination concerning the statements, and her testimony was consistent with the statements. Consequently, Dr. Klass' testimony was properly admitted as a prior consistent statement of a witness, and whether it was beyond the boundaries of Evid. R. 702 is irrelevant.
 {¶ 57} Next, Lester contends that the probative value of Dr. Klass' testimony was unfairly prejudicial, specifically Dr. Klass' testimony that S.R. informed her of the identify of the perpetrator. However, Lester objected to this inquiry at trial and the trial court sustained the objection. Thus, the trial court did not make the error Lester alleges. Further, we find that the admission of Dr. Klass' testimony concerning S.R.'s account of the incident did not amount to unfair prejudice as contemplated by Evid. R. 403 because it was cumulative in nature and probative as a prior consistent statement of a witness.
 {¶ 58} Accordingly, we overrule Lester's fifth assignment of error. *Page 29 
 Assignment of Error No. VI {¶ 59} In his sixth assignment of error, Lester contends that the trial court erred when it admitted testimony of Brooks, S.R.'s special education teacher, because it went beyond that which is permitted for a lay witness, and because its probative value was substantially outweighed by its prejudicial effect. Specifically, Lester argues that Brooks' testimony went beyond that which is allowed for a lay witness under Evid. R. 701 because her testimony about S.R.'s limited cognitive ability and passivity was not based on her own perceptions. Additionally, Lester contends that Brooks' testimony about S.R.'s limited cognitive abilities unfairly aroused sympathy for her and portrayed Lester as a predator of individuals with limited intellectual functioning. We disagree.
 {¶ 60} Evid. R. 701 governs opinion testimony by lay witnesses and provides:
 If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702.
 {¶ 61} Here, Lester complains that Brooks' testimony went beyond that permitted by Evid. R. 701 because her opinions about S.R.'s cognitive ability and passivity were not based on her own perceptions. However, Brooks testified that *Page 30 
she was S.R.'s special education teacher and formed her opinion from her personal experience with and observation of S.R. Accordingly, we find that Brooks' testimony was based on her own perceptions and properly admitted under Evid. R. 701.
 {¶ 62} Additionally, Lester complains that the probative value of Brooks' testimony was substantially outweighed by unfair prejudicial effect. However, Brooks' testimony had significant probative value because it served to rebut Lester's impeachment of S.R. for failing to call out for help during the incident or to call the police and report the incident. Brooks' testimony demonstrated that such passivity was consistent with S.R.'s personality and lack of certain skills.
 {¶ 63} Accordingly, we overrule Lester's sixth assignment of error.
 Assignment of Error No. VII {¶ 64} In his seventh assignment of error, Lester contends that trial counsel was ineffective. Specifically, Lester argues that trial counsel was ineffective for calling a witness who provided damaging and prejudicial testimony; for failing to challenge the competence of the alleged victim; and, for failing to challenge the testimony of the alleged victim's special education teacher.
 {¶ 65} An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.Bradley, *Page 31 
42 Ohio St.3d at paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v. Waddy
(1992), 63 Ohio St.3d 424, 433, superseded by constitutional amendment on other grounds as recognized by State v. Smith, 80 Ohio St.3d 89, 103,1997-Ohio-355.
 {¶ 66} Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. State v. Malone, 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray (1986), 477 U.S. 527.
 {¶ 67} First, Lester argues that trial counsel was ineffective for calling Warnecke as a witness. Lester contends that, because Warnecke testified that she was no longer friends with S.R. and believed she was at trial to testify "against" S.R., the jury may have believed that she had a vendetta against S.R. and discredited Warnecke's testimony. *Page 32 
 {¶ 68} The decision whether to call a witness is "within the rubric of trial strategy and will not be second-guessed by a reviewing court."Treesh, 90 Ohio St.3d at 490. Here, the record provides no evidence supporting a claim that calling Warnecke was not sound trial strategy. In fact, it appears from the record that Warnecke was the only witness who testified that S.R. did not appear upset when speaking about engaging in sexual intercourse with Lester. Thus, Warnecke may have been the only available witness who could corroborate Lester's apparent defense that his sexual conduct with S.R. was consensual. Thus, we find that trial counsel was not ineffective for calling Warnecke. Additionally, even had trial counsel been ineffective for calling Warnecke, Lester has failed to demonstrate a reasonable probability that, had she not been called, the outcome at trial would have been different.
 {¶ 69} Next, Lester contends that trial counsel was ineffective for failing to challenge S.R.'s competence to testify at trial and for failing to challenge Brooks' testimony because its probative value was substantially outweighed by its prejudicial effect. However, as this Court has previously stated, "[t]he failure of an attorney to file motions can be attributed to sound trial strategy as well as to ethical considerations of filing potentially frivolous motions and the assessments of the merits and likelihood of the success of the proceedings contemplated." State v. Williamson, 3d Dist. No. 2-94-27,1995 WL 296299, citing Defiance v. *Page 33 Cannon (1990), 70 Ohio App.3d 821, 826. As we already determined in our disposition of Lester's second and fifth assignments of error, S.R. was competent to testify and the probative value of Brooks' testimony was not substantially outweighed by prejudicial effect. Accordingly, trial counsel's failure to challenge S.R.'s competence and Brooks' testimony may be attributed to her trial strategy and desire to refrain from filing frivolous motions unlikely to succeed. Thus, trial counsel's performance was within objective standards of reasonable representation. Moreover, as S.R. was competent to testify and Brooks' testimony was proper, Lester has failed to demonstrate any prejudice.
 {¶ 70} Accordingly, we overrule Lester's seventh assignment of error.
 {¶ 71} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1